**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN FERRY** | : | CIVIL ACTION |
| Plaintiff, | : | No. ______________________ |
| v. | : | |
| **CITY OF ALLENTOWN** | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff John Ferry, by and through undersigned counsel, hereby complains as follows against Defendant City of Allentown ("City"):

## I. INTRODUCTION

1. Allentown Mayor Matt Tuerk fired John Ferry because he cooperated with an investigation into racial and ethnic discrimination within the City's workforce. That's illegal, and so Mr. Ferry files suit herein, prosecuting a claim for illegal retaliation under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.) ("**Title VII**"). A "short and plain" statement of facts follows, as prescribed by Rule 8 of the Federal Rules of Civil Procedure.

## II. PARTIES

2. Plaintiff is an adult male and citizen of the United States.

3. The City is the county seat for Lehigh County, PA. It is governed by a Mayor and a seven-person City Council.

4. The City is an "employer" within the meaning of Title VII because it is engaged in an industry affecting interstate commerce and because it has maintained 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

5. At all times relevant herein, the City acted through its several agents, servants, and employees (including but not limited to those named elsewhere in this Complaint), each of whom acted in the course and scope of their employment for the City at all times relevant herein. The City is therefore fully responsible for the illegal acts and omissions of the aforesaid employees pursuant to the principle of *respondeat superior*.

## III. JURISDICTION AND VENUE

6. This Court may properly maintain personal jurisdiction over the City because the City's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over the City to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

7. The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

8. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)

because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district and the City is subject to personal jurisdiction in the Eastern District of Pennsylvania.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII. In particular:

a. Plaintiff filed a timely written charge of retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC");

b. The EEOC assigned it Charge No. 530-2026-06091;

c. On or about June 8, 2026, Plaintiff received his Right to Sue letter;

d. The instant action is timely because it was initiated within ninety (90) days of the receipt of the aforementioned Notice;

e. Plaintiff has fully exhausted his administrative remedies.

## V. FACTUAL BACKGROUND

10. Plaintiff grew up in the Lehigh Valley and graduated Northampton High School in 1995.

11. He then joined the United States Air Force and served on active duty for 20 years. By the time he was honorably discharged in 2015, he had ascended to the rank of Master Sergeant.

12. In or about October 2018, Plaintiff was hired by the City as an HR Coordinator.

Thereafter, he served in multiple roles including Risk Claims Analyst, Interim HR Director and finally Risk and Safety Manager.

13. Matt Tuerk became Mayor of the City of Allentown in January 2022.

14. During the first two years of Mayor Tuerk's term, there were multiple complaints raised by City employees as to racial and ethnic hostility within the City's workforce.

15. In September 2023, City Council unanimously voted to authorize an outside investigation into the discrimination complaints.

16. In June 2024, Council voted 6-1 to hire former FBI agent Scott Curtis to conduct the investigation.

17. Plaintiff was contacted by Curtis and cooperated with the investigation, as required by City policy.

18. Mayor Tuerk, however, refused to accept Council's selection of Curtis as the investigator and claimed the contract with Curtis was void.

19. In or about September 2024, City Council filed a lawsuit against Mayor Tuerk so as to enforce the agreement with Curtis and stop what Council described to be Mayor Tuerk's obstruction of an investigation into the administration.

20. In or about December 2024, Council voted to suspend the Curtis investigation.

21. In or about January 2025, Council voted to authorize the appointment of a law firm to conduct the investigation that Curtis had begun.

22. Later in 2025, Mayor Tuerk reached a deal with Curtis wherein Curtis would be paid for his work, but Curtis had to turn over all of the materials generated from his investigation.

23. In or about late September 2025, Plaintiff was summoned to meet with attorneys David Macmain and Tricia Ambrose from the law firm of Macmain Leinhauser.

24. Macmain and Ambrose combatively interrogated Plaintiff about his cooperation with the Curtis investigation. Plaintiff truthfully explained the nature of his communications and interactions with Curtis.

25. During this period of time in 2025, Tuerk maintained a list of employees he wanted to fire. Plaintiff's name was on that list.

26. Approximately two months after the meeting with Macmain and Ambrose, Plaintiff was summoned to Tuerk's office. The Mayor was there, along with Macmain and Ambrose.

27. Plaintiff was fired, with no explanation.

28. Mayor Tuerk's animosity toward Plaintiff in late 2025 sharply contrasts with Tuerk's admiration for Plaintiff just a year earlier - before Tuerk learned of Plaintiff's cooperation with the Curtis investigation. In July 2024, Tuerk had pleaded with Plaintiff to serve as Interim HR Director. Plaintiff reluctantly agreed.

29. Then, in or about October 2024, after Plaintiff's 90 days were up in the interim position, Mayor Tuerk told him that he wanted to appoint Plaintiff permanently to that Cabinet-level job. Plaintiff respectfully declined the invitation and returned to his Risk Management position.

## COUNT ONE - RETALIATION IN VIOLATION OF TITLE VII

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. In the manner set forth above, Defendant engaged in knowing, purposeful and unlawful retaliation against Plaintiff.

32. As a result of the unlawful retaliation perpetrated by Defendant, Plaintiff has suffered pecuniary damages including but not limited to denial of employment, lost wages, lost benefits, lost promotions, lost bonuses, lost training, and lost experience.

33. As a result of the retaliation inflicted by Defendant, Plaintiff has suffered significant emotional pain, anguish and suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A. Defendant is to be permanently enjoined from discriminating against Plaintiff on any basis forbidden by Title VII;

B. Defendant is to promulgate and/or adhere to a policy prohibiting discrimination and/or retretaliation in the workplace, and ensure this policy is fairly and adequately enforced;

C. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, interest, salary, pay increases, bonuses, insurance, benefits, training, promotions, lost 401K or retirement benefits, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date his employment was terminated until the date of verdict, and

Defendant should be ordered to provide an accounting of all benefits lost by Plaintiff to ensure Plaintiff is made whole if deemed appropriate by the Court;

D. Plaintiff is to be awarded compensatory damages for the mental anguish, emotional distress, pain and suffering caused by Defendant's actions;

E. Plaintiff is to be accorded equitable or injunctive relief as allowed by applicable law;

F. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

G. This Court should grant any and all other such legal or equitable relief as it deems necessary, just, and appropriate;

H. This Court should maintain jurisdiction over the instant action to ensure full compliance with its Orders therein until such time it is satisfied that its Orders and dictates have been complied with in full by Defendant;

I. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**WEINSTEIN LAW FIRM, LLC**

By: *Marc Weinstein*
_______________________________

Marc E. Weinstein, Esquire
500 Office Center Drive, Suite 400
Fort Washington, PA 19034
marc@meweinsteinlaw.com
267.513.1942 tel
Counsel to Plaintiff

Dated: August 25, 2026